UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| WELLINGTON GRANT | CIVIL ACTION |
| VERSUS | NO. 10-3303 |
| MARLIN N. GUSMAN, LT. RUEZ, (SOD) SGT. WADE | SECTION "A"(4) |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**. On November 30, 2010, the Court conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff and counsel for the defendants participating by conference telephone call.[2] Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

---

[1] 766 F.2d 179 (5th Cir. 1985). The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges to have occurred and the legal basis for the claims. The information elicited at the hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[2] Rec. Doc. No. 11. The plaintiff was sworn prior to testifying. The hearing was digitally recorded.

I.   **Factual Background**

   A.   **The Complaint**

The plaintiff, Wellington Grant ("Grant"), filed this *pro se* and *in forma pauperis* complaint brought pursuant to 42 U.S.C. § 1983 against Orleans Parish Sheriff Marlin N. Gusman, Lieutenant Ruiz,[3] and Sergeant Wade, alleging failure to protect and inadequate medical care while he was housed in the Orleans Parish Prison ("OPP") on tier A-2 in cell 4. He is currently incarcerated in the Dixon Correctional Institute in Jackson, Louisiana.

Grant alleges that, on September 28, 2009, while in OPP, he received physical threats from an inmate on his tier. He reported to the deputy on duty that he feared his life was in danger, and he requested to be moved to another tier. He claims that the deputy at first thought he was joking. The deputy then told him that, while he was "gangsta" on the street, he was a coward in the jail. The deputy reportedly told him that he was not a guardian angel, and then locked him in his cell.

Grant claims that, about one hour later, the cell doors were opened on the tier. He immediately reported to the deputy that he heard two inmates plotting to hurt him, and again requested to be moved to another tier. Grant indicates that the deputy said he was not willing to do the paperwork for a transfer. Grant later asked to see a ranking officer, but was told he had "to ride it out." Grant contends that the deputy left the tier, with all of the cell doors still open, knowing he was in danger. Grant claims that as he turned to return to his cell, he was punched in the eye and knocked out. He was hit a second time and lost consciousness. Another inmate awakened him and walked him to his cell to put ice on his eye. While he sat in his cell, the same attacker returned to fight with him. Grant claims that he was able to fight back that time.

---

[3]The name "Lt. Ruez" was corrected in the defendants' answer to "Lt. Ruiz."  Rec. Doc. No. 8.

He indicates that Lt. Ruiz arrived on the tier and he yelled to him for help. He claims that his eye was swollen and bleeding. Lt. Ruiz escorted him to the medical ward, but he had to be shipped to the LSU hospital for treatment. He told Lt. Ruiz that he wanted to file charges against the attacker and to file a civil suit against the deputy in charge of the tier at that time.

Grant claims that the LSU doctors advised Lt. Ruiz that his eye injury was caused by a weapon, not a fist. Grant took a CT scan, and ultrasound and x-rays, which revealed that he had a fractured orbital bone and complete, irreversible loss of the vision in his left eye. He underwent surgery on October 2, 2009. The surgery was to place a plate under the left eye and stitches to the corner of his eye.

Grant further claims that, upon his return to OPP, he did not receive the medical care or therapy he needed to fully recover. Grant now seeks compensatory and punitive damages for the loss of vision in his left eye and the physical and psychological pain he has suffered as a result of the lack of protection at the jail.

### B.     The *Spears* Hearing

Grant testified that he was incarcerated in 2008 on battery charges. He was convicted and, on January 22, 2009, he was sentenced to serve five years in jail. A few days before the incident about which he complains, he was moved onto a new tier at OPP. On September 28, 2009, an inmate, whose name he did not know, bumped into Grant in the hall of the tier, and then told Grant to watch where he was going. Grant stated that he replied that it was the other inmate's fault, and they cursed at each other and exchanged words.

Shortly after that, their side of the tier was placed back in their cells for a fifteen minute lockdown while the other side of the tier was left free to roam. During that time, Grant claims that

he heard the other inmate plotting to injure him. When the tier doors reopened, he went to the tier sergeant, whose name he did not know, to report that he was in danger.

A short while later, the other inmate used a weapon to hit him in the eye and they fought. Lieutenant Ruiz came on the tier and pulled them apart. Lieutenant Ruiz sent him to medical, but he had to be sent to the hospital to treat his eye. He suffered a racked orbital bone under the left eye during the fight. The doctors at the hospital could not do anything to bring back his eyesight.

Grant testified that he was satisfied with Lt. Ruiz's response to the fight and getting him medical attention. He sued Lt. Ruiz, however, because he thought Ruiz should have reported the name of the attacker to Sergeant Wade, the investigating officer. Grant indicated that, on the day of the fight, he asked Lt. Ruiz who the attacker was, but he did not know at that time. He never saw Lt. Ruiz again to ask if he determined what weapon was used or if he reported the name of the attacker. He just assumed that he did not do so. Grant also concedes that he also did not ask the other inmates on the tier for the name of the attacker.

Grant stated that he named Sgt. Wade as a defendant, because he did not investigate the incident. He testified that Sgt. Wade interviewed him about the fight. He assumed that Sgt. Wade did not further investigate, because his mother was unable to find out the outcome of the investigation. He testified that his mother called and spoke with Sgt. Wade twice during the first few weeks after the incident, and he told her that the investigation was on-going at that time. Grant never followed-up with Sgt. Wade to find out the outcome of the completed investigation. Grant stated that he assumed the investigation was not completed, because he did not know the outcome. He never spoke to Sgt. Wade after the initial interview.

Finally, Grant testified that he did not intend to sue Sheriff Gusman, and acknowledged that Sheriff Gusman was not involved in the incident.

## II.     Standards of Review

Title 28 U.S.C. §§ 1915A and Title 42 U.S.C. §§ 1997e(c) require the Court to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle*, 789 F.2d 318 (5th Cir. 1986), *modified on other grounds, Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Neitzke*, 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

**III.    Analysis**

    **A.    Claims Against Sheriff Gusman**

Grant, under oath, advised the Court that he did not intend to name Sheriff Gusman as a defendant in this action. He therefore has not stated a claim against the Sheriff cognizable under § 1983. Grant's claims against Sheriff Gusman are frivolous and otherwise fail to state a claim for which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e.

    **B.    Lieutenant Ruiz**

Grant indicated that he named Lieutenant Ruiz as a defendant, because he should have reported the name of the attacker to Sergeant Wade and perhaps should have investigated to determine the weapon used in the fight. Grant, nevertheless, acknowledges that he has no basis to support this claim and that he only assumes that he did not do so. He also concedes that Sergeant Wade, not Lieutenant Ruiz, was in charge of the investigation.

Section 1983 provides a federal cause of action against any person, who, acting under color of state law, deprives another of his constitutional rights. 42 U.S.C. § 1983. A plaintiff must prove both the constitutional violation and that the action was taken under color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978); *Polk Country v. Dodson*, 454 U.S. 312 (1981).[4] In this instance, Grant has failed to point to a constitutional violation by Lieutenant Ruiz.

Grant indicated that Lieutenant Ruiz broke up the fight and sent him for immediate medical attention.[5] He concedes that he has no basis to support his claim that Lieutenant Ruiz did not

---

[4] The question of state action is not at issue here, where the defendants are alleged to have been acting within their duties in the Orleans Parish Sheriff's Office.

[5] It is important to note that Grant testified at the *Spears* Hearing that he did not know the name of the sergeant to whom he made the request for protection from the other inmate.

cooperate with or contribute to Sergeant Wade's investigation of the attack. He instead stated that he did not see Lieutenant Ruiz after the incident to ask him if he determined the weapon used or the name of the attacker. His claim against Lieutenant Ruiz, therefore, is both factually and legally baseless and should be dismissed as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e.

### C. Sergeant Wade

Grant complains that Sergeant Wade did not complete the investigation of the incident. As with the claims against Lieutenant Ruiz, Grant concedes that he did not follow-up with Sergeant Wade to find out the results of the investigation. Grant knows only that his mother was told shortly after the attack that the investigation was on-going. Grant made no other effort to follow-up with Sergeant Wade. He simply assumed that, because he was not told the outcome, the investigation was not done.

For these reasons, Grant has not alleged a violation of a constitutional right by Sergeant Wade as required for redress under § 1983. *See Flagg Bros.*, *Inc.*, 436 U.S. at 156. His claim against Lieutenant Ruiz, therefore, is both factually and legally baseless and should be dismissed as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e.

### D. Failure to Protect Claim

The underlying claim posed by Grant's complaint and *Spears* Hearing testimony involves the alleged failure to protect him from the impending attack after he notified a tier sergeant that he felt he was in danger. Under the Eighth Amendment, prison officials have a duty to protect inmates from violence by other inmates and to take reasonable measures to protect their safety. *Farmer*, 511

U.S. at 832-33; *Hare v. City of Corinth*, 74 F.3d 633, 650 (5th Cir. 1996). The Eighth Amendment standard enunciated in *Farmer* applies to a prisoner's claim that prison officials failed to protect him from harm inflicted by other inmates. Thus, prison officials can be held liable for their failure to protect an inmate only when they are deliberately indifferent to a substantial risk of serious harm. *Farmer*, 511 U.S. at 834; *Newton v. Black*, 133 F.3d 301, 308 (5th Cir. 1998).

In this instance, Grant is unable to provide the name of the tier sergeant to whom he reported his distress. While the severity of the injury is recognized, Grant has not and apparently cannot name a defendant potentially culpable for a failure to protect him from the danger posed by the threatening inmate. Without a person responsible for the alleged violation, a § 1983 action does not stand. His claim for failure to protect must also be dismissed without prejudice as frivolous or for failure to state a claim for which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e.

### IV. Recommendation

It is therefore **RECOMMENDED** that Grant's § 1983 claims against Sheriff Gusman, Lieutenant Ruiz, and Sergeant Wade be **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. §§ 1915(e), 1915A and 42 U.S.C. §1997e.

It is further **RECOMMENDED** that Grant's § 1983 claims for failure to protect be **DISMISSED WITHOUT PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. §§ 1915(e), 1915A, and 42 U.S.C. § 1997e.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on

appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[6]

New Orleans, Louisiana, this 17th day of October, 2011.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[6]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.